No. 2012-1415

# In the United States Court of Appeals for the Federal Circuit

TECSEC, INC.,

*Plaintiff-Appellant,*

v.

INTERNATIONAL BUSINESS MACHINES CORPORATION AND EBAY INC.,

*Defendants,*

AND

CISCO SYSTEMS, INC., SAS INSTITUTE INC., SUN MICROSYSTEMS, INC.
(NOW KNOWN AS ORACLE AMERICA, INC.), ORACLE CORPORATION, AND PAYPAL, INC.

*Defendants-Appellees,*

AND

SAP AMERICA, INC., SAP, AG, AND SYBASE, INC.,

*Defendants-Appellees,*

AND

SOFTWARE AG, INC. AND, SOFTWARE AG,

*Defendants-Appellees,*

AND

ADOBE SYSTEMS, INC.,

*Defendant-Appellee.*

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA
IN CASE NO. 10-CV-0115, JUDGE LEONIE M. BRINKEMA

## BRIEF OF DEFENDANTS-APPELLEES

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles CA 90071
(213) 680-8400
*For Cisco Systems, Inc., SAS
Institute, Inc., Oracle America, Inc.,
Oracle Corp., and PayPal, Inc.*

Steven C. Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York NY 10022
(212) 446-4800
*For Cisco Systems, Inc., SAS
Institute, Inc., Oracle America, Inc.,
Oracle Corp., and PayPal, Inc.*

John C. O'Quinn
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000
*For Cisco Systems, Inc., SAS
Institute, Inc., Oracle America, Inc.,
Oracle Corp., and PayPal, Inc.*

Jeffrey K. Sherwood
Megan S. Woodworth
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
202-420-3602
*For SAP AG, SAP America, Inc.,
and Sybase, Inc.*

Michael W. Robinson
Jeffri A. Kaminski
VENABLE LLP
8010 Towers Crescent Dr.,
  Suite 300
Vienna, VA 22182
(703) 760-1684
*For Software AG and
Software AG, Inc.*

Henry C. Bunsow
Christina M. Finn
BUNSOW, DE MORY, SMITH
  & ALLISON LLP
55 Francisco Street, 6th Floor
San Francisco, CA 94133
(415) 675-8889
*For Adobe Systems, Inc.*

September 21, 2012

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 26.1, 28(a)(1), and 47.4, counsel for Defendants-Appellees Oracle America, Inc., Oracle Corporation, Cisco Systems, Inc., PayPal, Inc., and SAS Institute Inc. certifies the following:

1.    The full names of every party represented by me are:

*Oracle America, Inc. (f/k/a Sun Microsystems, Inc.)*
*Oracle Corporation*
*Cisco Systems, Inc.*
*PayPal, Inc.*
*SAS Institute Inc.*

2.    The name of the real party in interest is:  *N/A*

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

*Oracle Corporation is the parent of Oracle America, Inc. No other corporation or publicly held company is the parent or owns 10 percent or more of the stock of either Oracle Corporation or Oracle America.*

*No corporation or publicly held company is the parent or owns 10 percent or more of the stock of Cisco Systems, Inc.*

*eBay, Inc., is the parent corporation of PayPal, Inc.  No other parent corporations exist, nor does any other publicly held company own 10 percent or more of the stock of either eBay, Inc. or PayPal, Inc.*

*No corporation or publicly held company is the parent or owns 10 percent or more of the stock of SAS Institute Inc.*

4.    The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this Court are:

<u>Kirkland & Ellis LLP</u> (for all parties listed above)
Michael W. De Vries
Steven C. Cherny
John C. O'Quinn
William H. Burgess

<u>Covington & Burling LLP</u> (for PayPal, Inc.)
Gary M. Rubman
Sarah M. Hall
George F. Pappas
Nitin Subhedar

<u>Jones Day</u> (for SAS Institute Inc.)
Walter D. Kelley, Jr.
Tara Lynn R. Zurawski
Thomas R. Goots

<u>Law Office of Craig C. Reilly</u> (for Cisco Systems, Inc.)
Craig C. Reilly

<u>Kilpatrick Townsend & Stockton LLP</u> (for Cisco Systems, Inc.)
Stephen E. Baskin
Amr O. Aly
William H. Boice
Mitchell G. Stockwell

<u>Kilpatrick Townsend & Stockton LLP</u> (for Oracle America, Inc. and Oracle Corp.)
Jonathan D. Link
James G. Gilliland, Jr.
A. James Isbester
Mehrnaz Boroumand Smith

September 21, 2012                    /s/ John C. O'Quinn

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 26.1, 28(a)(1), and 47.4, counsel for Defendant-Appellees SAP America, Inc., SAP, AG and Sybase, Inc. certifies the following:

1.  The full names of every party represented by me are:

    *SAP America, Inc.; SAP, AG; Sybase, Inc.*

2.  The name of the real party in interest is:  *N/A*

3.  All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

    *The parent corporation of SAP America, Inc. is SAP AG, a publicly-traded German entity.  There is no other parent or publicly-held company that owns 10 percent or more of the stock of either SAP America, Inc. or SAP, AG.*

    *The parent corporation of Sybase, Inc. is SAP America, Inc.   There is no other parent or publicly-held company that owns 10 percent or more of the stock of Sybase, Inc.*

4.  The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this Court are listed below:

| Dickstein Shapiro LLP | McDermott Will & Emery LLP |
|---|---|
| Jeffrey K. Sherwood | Blair M. Jacobs |
| Frank C. Cimino, Jr. | Christina A. Ondrick |
| Megan S. Woodworth | Karla L. Palmer |
| Charles D. Ossola | Katie Bukrinsky |
| Matthew B. Weinstein (former) | Terrence McMahan |
|  | Vera Elson |
|  | Yar Chaikovsky |
|  | Hong Lin |

September 21, 2012          /s/ Jeffrey K. Sherwood
                            (with permission)

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 26.1, 28(a)(1), and 47.4, counsel for Defendants-Appellees Software AG and Software AG, Inc., certifies the following:

1.    The full names of every party or amicus represented by me are Software AG and Software AG, Inc.

2.    Software AG and Software AG, Inc. are the real parties in interest represented by me in this appeal.

3.    Software AG, Inc. is wholly owned by Software AG. Other than this parent-subsidiary relationship, there are no other parent companies, nor any publicly held corporations that own 10% or more of stock of Software AG or Software AG, Inc.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this Court are:

| **Firm** | **Attorneys** |
|---|---|
| Venable LLP | Michael W. Robinson |
| | Stephen K. Gallagher |
| | Jeffri A. Kaminski |

September 21, 2012                  /s/ Michael W. Robinson
                                                        (with permission)

# CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rules 26.1, 28(a)(1), and 47.4, counsel for Defendant-Appellee Adobe Systems, Inc. hereby certifies the following:

1.   The full names of every party represented by me are:

     Adobe Systems Incorporated

2.   The name of the real party in interest is:

     Adobe Systems Incorporated

3.   All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are:

     None.

4.   The names of all law firms and the partners or associates that appeared for the parties now represented by me in the trial court or are expected to appear in this Court are:

     **BUNSOW, DE MORY, SMITH, & ALLISON LLP**
     Henry C. Bunsow
     Christina M. Finn

     **DEWEY & LEBOEUF LLP**
     Lyle Roberts
     Andrew N. Stein

     **HOWREY LLP**
     Henry C. Su
     James F. Valentine
     William P. Nelson
     Vivian S. Kuo

     September 21, 2012            /s/ Henry C. Bunsow
     _____(with permission)_____

v

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION...................................................................1

PRELIMINARY STATEMENT ......................................................................2

STATEMENT OF THE ISSUES.....................................................................4

STATEMENT OF THE CASE .......................................................................4

STATEMENT OF FACTS .............................................................................6

    A.    TecSec's Patents......................................................................6

    B.    District Court Proceedings ......................................................9

    C.    Previous Appeal ...................................................................12

    D.    Subsequent District Court Proceedings..............................14

SUMMARY OF THE ARGUMENT ..............................................................16

STANDARD OF REVIEW ..........................................................................17

ARGUMENT ..............................................................................................18

I.    TecSec is Precluded from Challenging the District Court's Claim Construction for a Second Time.................................................................18

    A.    Collateral Estoppel Precludes TecSec From Rearguing Claim Construction ........................................................................19

    B.    The Mandate Rule Precludes TecSec From Rearguing Claim Construction ........................................................................25

II.    The District Court Correctly Construed "Multi-Level Multimedia Security"................................................................................................27

    A.    The District Court Correctly Construed "Multimedia"......................29

        1.    The District Court's Construction is Consistent with the Express Definition Provided to the Patent Office, and With the Specification.................................................29

        2.    TecSec's Arguments are Without Merit .................................31

    B.    The District Court Correctly Construed "Multi-Level … Security"..........................................................................38

        1.    The Intrinsic Evidence Supports the District Court's Construction ........................................................................38

        2.    TecSec's New Claim Construction is Waived..........................43

   3. TecSec's Arguments Are Without Merit...................................44

III. Should This Court Reach the Issue, the District Court Correctly
  Construed the Means-Plus-Function Limitations..........................................54

  A. The District Court Correctly Held That The "Digital Logic
   Means" and "System Memory Means" Limitations of Claim 8
   of the '702 Patent are Means-Plus-Function Limitations and
   That TecSec Failed to Disclose Sufficient Structure .........................57

   1. The District Court Correctly Held That "system memory
    means" is a Means-Plus-Function Limitation, and That
    TecSec Failed to Disclose Sufficient Structure .......................58

   2. The District Court Correctly Held That "system memory
    means" is a Means-Plus-Function Limitation, and That
    TecSec Failed to Disclose Sufficient Structure .......................60

  B. The District Court Correctly Held that TecSec Failed to
   Disclose Adequate Structure Corresponding with Any of the
   Other Means-Plus-Function Limitations.............................................61

CONCLUSION .......................................................................................................63

# TABLE OF AUTHORITIES

## Cases

*800 Adept, Inc. v. Murex Secs., Ltd.*,
539 F.3d 1354 (Fed. Cir. 2008) .............................................................. 35, 37, 52

*AbTox, Inc. v. Exitron Corp.*,
122 F.3d 1019 (Fed. Cir. 1997) ...........................................................21

*Andersen Corp. v. Fiber Composites, LLC*,
474 F.3d 1361 (Fed. Cir. 2007) ...........................................................48

*Apex Inc. v. Raritan Computer, Inc.*,
325 F.3d 1364 (Fed. Cir. 2003) ...........................................................55

*Apple Computer, Inc. v. Articulate Sys., Inc.*,
234 F.3d 14 (Fed. Cir. 2000) ...............................................................17

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Gaming Tech.*,
521 F.3d 1328 (Fed. Cir. 2008) ................................................... 55, 60

*Astrazeneca AB v. Mut. Pharm. Co.*,
384 F.3d 1333 (Fed. Cir. 2004) ...........................................................30

*Ballard Med. Prods. v. Allegiance Healthcare Corp.*,
268 F.3d 1352 (Fed. Cir. 2001) ...........................................................56

*Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*,
262 F.3d 1258 (Fed. Cir. 2001) ...........................................................51

*Bicon, Inc. v. Straumann Co.*,
441 F.3d 945 (Fed. Cir. 2006) .............................................................33

*Biomedino, LLC v. Waters Techs. Corp.*,
490 F.3d 946 (Fed. Cir. 2007) .............................................................55

*Blackboard, Inc. v. Desire2Learn, Inc.*,
574 F.3d 1371, (Fed. Cir. 2009) ................................................... 61, 63

*Cammeyer v. Newton*,
94 U.S. 225 (1876) ................................................................................21

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   296 F.3d 1106 (Fed. Cir. 2002) .......................................... 55, 58, 61, 62

*Catalina Mktg., Int'l v. Coolsavings.com, Inc.*,
   289 F.3d 801 (Fed. Cir. 2002) .............................................28

*CCS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002) ...........................................31

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986).........................................................11

*Chicago Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*,
   677 F.3d 1361 (Fed. Cir. 2012) ...........................................59

*Cordis Corp. v. Boston Scientific Corp.*,
   561 F.3d 1319 (Fed. Cir. 2009) ....................................... 33, 44

*CSIRO v. Buffalo Tech. (USA), Inc.*,
   542 F.3d 1363 (Fed. Cir. 2008) ..................................... 28, 33

*CVI/Beta Ventures, Inc. v. Tura LP*,
   112 F.3d 1146 (Fed. Cir. 1997) ..................................... 29, 32

*Cybor Corp. v. FAS Techs., Inc.*,
   138 F.3d 1448 (Fed. Cir. 1998) (en banc) .................... 17, 18

*Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*,
   412 F.3d 1291 (Fed. Cir. 2005) ...........................................55

*Doe v. Chao*,
   511 F.3d 461 (4th Cir. 2007) ..............................................25

*Dow Jones & Co., Inc. v. Ablaise Ltd.*,
   606 F.3d 1338 (Fed Cir. 2010) ...........................................18

*Edwards Lifesciences LLC v. Cook Inc.*,
   582 F.3d 1322 (Fed. Cir. 2009) ...........................................42

*Engel Indus., Inc. v. Lockformer Co.*,
   166 F.3d 1379 (Fed. Cir. 1999) ..................................... 25, 26

*Enzo Biochem, Inc. v. Applera Corp.,*
    599 F.3d 1325 (Fed. Cir. 2010) ............................................................47

*Ergo Licensing LLC v. CareFusion 303, Inc.,*
    673 F.3d 1361 (Fed. Cir. 2012) ............................................................60

*Gen. Mills, Inc. v. Hunt-Wesson, Inc.,*
    103 F.3d 978 (Fed. Cir. 1997) ..............................................................45

*Graham v. John Deere Co.,*
    383 U.S. 1 (1966)...................................................................... 32, 37

*Halliburton Oil Well Cementing Co. v. Walker,*
    329 U.S. 1 (1946)...................................................................................55

*Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.,*
    222 F.3d 951 (Fed. Cir. 2000) ..............................................................36

*Honeywell Inc. v. Victor Co. of Japan, Ltd.,*
    298 F.3d 1317 (Fed. Cir. 2002) .................................................. 30, 32, 39

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,*
    452 F.3d 1312, (Fed. Cir. 2006) ................................................... 43, 51

*In re Donaldson Co.,*
    16 F.3d 1189 (Fed. Cir. 1994) (en banc) ...................................... 55, 61

*In re Freeman,*
    30 F.3d 1459 (Fed. Cir. 1994) ..............................................................20

*In re Katz Interactive Call Processing Patent Litig.,*
    639 F.3d 1303 (Fed. Cir. 2011) ................................................... 59, 62

*In re Microsoft Corp. Antitrust Litig.,*
    355 F.3d 322 (4th Cir. 2004) ...................................................... 23, 24

*In re Thornburgh,*
    869 F.2d 1503 (D.C. Cir. 1989)............................................................26

*Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.,*
    589 F.3d 1179 (Fed. Cir. 2009) ............................................................21

*Irdeto Access, Inc. v. Echostar Satellite Corp.*,
  383 F.3d 1295 (Fed. Cir. 2004) ........................................ 29, 30, 36, 51

*J.T. Eaton & Co. v. Atl. Paste & Glue Co.*,
  106 F.3d 1563 (Fed. Cir. 1997) .........................................................30

*Jackson Jordan, Inc. v. Plasser Am. Corp.*,
  747 F.2d 1567 (Fed. Cir. 1984) .........................................................24

*Key Pharm. v. Hercon Labs. Corp.*,
  161 F.3d 709 (Fed. Cir. 1999) ...........................................................17

*Markman v. Westview Instruments, Inc.*,
  517 U.S. 370 (1996)...........................................................................21

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
  474 F.3d 1323 (Fed. Cir. 2007) .........................................................44

*Med. Instrumentation & Diagnostics Grp. v. Elekta AB*,
  344 F.3d 1205 (Fed. Cir. 2003) ................................................... 56, 63

*Moore v. Bennette*,
  517 F.3d 717 (4th Cir. 2008) .............................................................25

*Mother's Rest., Inc. v. Mama's Pizza, Inc.*,
  723 F.2d 1566 (Fed. Cir. 1983) ................................................... 22, 23

*N. Am. Container, Inc. v. Plastipak Packaging, Inc.*,
  415 F.3d 1335 (Fed. Cir. 2005) ................................................... 37, 52

*Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*,
  403 F.3d 1364 (Fed. Cir. 2005) .........................................................18

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
  545 F.3d 1359 (Fed. Cir. 2008) .........................................................54

*Noah Sys., Inc. v. Intuit Inc.*,
  675 F.3d 1302 (Fed. Cir. 2012) ................................................... 61, 62

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
  442 F.3d 1331 (Fed. Cir. 2006) .........................................................28

*Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*,
   170 F.3d 1373 (Fed. Cir. 1999) ..............................................19

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (en banc) ............................... 31, 32, 39

*Poly-Am., L.P. v. GSE Lining Tech., Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004) ..............................................28

*Ritter v. Mount St. Mary's College*,
   814 F.2d 986 (4th Cir. 1987) ................................................ 23, 24, 25

*Sage Prods., Inc. v. Devon Indus., Inc.*,
   126 F.3d 1420 (Fed. Cir. 1997) .............................................. 33, 44

*Seachange Int'l, Inc. v. C-COR, Inc.*,
   413 F.3d 1361 (Fed. Cir. 2005) ..............................................48

*Sinorgchem Co. v. ITC*,
   511 F.3d 1132 (Fed. Cir. 2007) .............................................. 35, 47

*Springs Window Fashions LP v. Novo Indus., L.P.*,
   323 F.3d 989 (Fed. Cir. 2003) ...............................................36

*SRI Int'l v. Matsushita Elec. Corp. of Am.*,
   775 F.2d 1107 (Fed. Cir. 1985) (en banc) ........................................21

*Stratoflex, Inc. v. Aeroquip Corp.*,
   713 F.2d 1530 (Fed. Cir. 1983) ..............................................45

*Texas Instruments, Inc. v. ITC*,
   988 F.2d 1165 (Fed. Cir. 1993) ..............................................33

*TI Grp. Auto. Sys. (N. Am.), Inc. v. VDO N. Am., LLC*,
   375 F.3d 1126 (Fed. Cir. 2004) ..............................................58

*Trading Techs., Int'l, Inc. v. eSpeed, Inc.*,
   595 F.3d 1340 (Fed. Cir. 2010) .............................................. 29, 32, 39

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996) ...............................................39

*Westmoreland Coal Co. v. Sharpe,*
  --- F.3d ---, 2012 WL 3553629 (4th Cir. Aug. 20, 2012) ....................................19

*Woodard v. Sage Prods., Inc.,*
  818 F.2d 841 (Fed. Cir. 1987) ............................................................................27

## Statutes

28 U.S.C. § 1295(a)(1) ...........................................................................................1

28 U.S.C. § 1331 ....................................................................................................1

35 U.S.C. § 112, ¶ 1 .............................................................................................39

35 U.S.C. § 112, ¶ 2 .............................................................................................39

35 U.S.C. § 112, ¶ 6 ............................................................................. 17, 54, 55

## Rules

Fed. R. Civ. P. 54(b) ......................................................................................... 5, 15

## STATEMENT OF RELATED CASES

Two appeals from the lower court proceeding have previously been before this Court: Nos. 2011-1303 and 2011-1345.

Appeal No. 2011-1303 was decided on January 18, 2012, 446 Fed. Appx. 882 (Rule 36 affirmance, Linn, Dyk, and Prost, JJ.).

Appeal No. 2011-1345 was a cross-appeal corresponding to No. 2011-1303 and was voluntarily dismissed by order of the Clerk on July 25, 2011.

Counsel for the parties to this brief are unaware of any other related cases currently pending before this Court or any other court that will directly affect or be affected by this Court's decision.

## STATEMENT OF JURISDICTION

Appellees agree with TecSec that jurisdiction was proper in the district court under 28 U.S.C. § 1331, is proper in this Court under 28 U.S.C. § 1295(a)(1), and was timely invoked by TecSec's May 8, 2012 notice of appeal from the April 24, 2012 judgment of the District Court (certified as final under 54(b)).

## PRELIMINARY STATEMENT

In March 2011, the district court granted summary judgment of noninfringement to IBM after construing "only those terms … *strictly necessary* to the resolution of the parties' [summary judgment] motions."   TecSec unsuccessfully appealed, and this Court affirmed the judgment of the district court in its entirety.   Now TecSec appeals the very same March 2011 claim constructions, as though its prior unsuccessful appeal against IBM never happened. Collateral estoppel and the mandate rule forbid this.   Having rejected TecSec's arguments once, the Court should not consider anew the same arguments asserting the same errors in the same sections of the same district court opinion in the same case.

Should the Court reach the merits, however, TecSec's arguments are just as meritless now as they were before.   In arguing for a different construction of the term "multimedia," TecSec once again attempts to run away from its prior representations to the Patent Office, asking this Court to ignore the very definition it provided to the Patent Office in response to an indefiniteness rejection.   And, once again, TecSec has no answer for the fact that the specification, with overwhelming consistency, explains that "multi-level … security" refers to the nesting of encrypted objects within other encrypted objects.   Indeed, the concept of providing multi-level security by nesting encrypted objects within encrypted

objects is the primary basis on which TecSec distinguished prior art, both in the specification and in prosecution. And that same concept is reflected in all of the examples in the patents. Yet, TecSec would run away from all of this and ask this Court to grant it, through appeal, claims that are much broader than it could have obtained from the Patent Office. There is no basis for doing so, and the judgment should be affirmed.

Finally, with respect to the means-plus-function claims—which the Court need not reach, as they also include the "multimedia" and "multi-level … security" limitations—TecSec also attempts to broaden its claims beyond what the law allows by claiming in purely functional terms without providing sufficient disclosure. The district court correctly held that TecSec failed to identify structures corresponding to the claimed functions, and TecSec fails—for the second time now—to demonstrate error in that analysis.

## STATEMENT OF THE ISSUES

1.    Whether TecSec's appeal is precluded by collateral estoppel and/or the mandate rule, where it has already taken a prior appeal in the same case on the same issues, and lost.

2.    Whether the district court's judgment should be affirmed because it correctly construed "multimedia."

3.    Whether the district court's judgment should be affirmed because it correctly construed "multi-level … security."

4.    Whether the district court's judgment as to the means-plus-function claims should be affirmed because the court correctly held TecSec failed to meet its burden to identify structures corresponding to the claimed functions.

## STATEMENT OF THE CASE

TecSec seeks review of the district court's construction of terms in four related patents, which share a common specification and have been referred to as the "DCOM Patents" or the "'702 patent family."

In 2010, TecSec sued thirteen defendants in the Eastern District of Virginia, alleging infringement of eleven patents (the DCOM patents and seven others) by dozens of accused products.  A2648-2730.  Because of the complexity of the case, the district court ordered TecSec to proceed first against one defendant (IBM), while TecSec's claims against the others were stayed.  A2731; A1742-44.

Both IBM and TecSec filed summary judgment motions that addressed claim construction. The district court construed the disputed claim terms that were "strictly necessary" to resolve the motions, granted summary judgment of noninfringement to IBM, A3-66 (published at 769 F. Supp. 2d 997), and entered judgment in IBM's favor. A68. TecSec appealed, challenging, among other things, the claim constructions it appeals here. This Court affirmed, No. 2011-1303, 446 Fed. Appx. 882 (Jan. 18, 2012).

After this Court's mandate issued, TecSec stipulated that the district court's claim constructions could not support TecSec's claims of infringement of the four DCOM patents against the current defendants any more than they could support TecSec's claims against IBM. TecSec requested entry of judgment and the district court granted TecSec's request, entering judgment of noninfringement by all defendants of the asserted claims of those four patents, certifying that judgment for appeal under Fed. R. Civ. P. 54(b), and staying TecSec's claims relating to the other patents. A69-70. TecSec now appeals.

## STATEMENT OF FACTS

### A.    TecSec's Patents

The four patents at issue here—the "DCOM patents" or the "'702 patent family," Nos. 5,369,702 (A142-57), 5,680,452 (A158-74), 5,717,755 (A175-90), and 5,898,781 (A191-206)—relate to encryption.  The patents share a common specification, and are titled "Distributed Cryptographic Object Method."

The patents describe prior art as consisting of passwords, A151:1:28-40, encryption, A151:1:46-60; A151:2:5-30, key management, A151:1:61-2:4, and labeling, A151:2:31-57—including labeling by itself and labeling in combination with encryption.  A151:2:34-40.

Every asserted claim—system and method—has the preamble phrase "providing multi-level multimedia security in a data network."  The "multi-level multimedia security" concept is central to the invention and the primary way in which the patents purport to distinguish the prior art.  TecSec cited that aspect of the invention to the Patent Office to avoid prior art, specifically defined both "multi-level … security" and "multimedia" to the Patent Office to avoid indefiniteness rejections, A435, and has cited that aspect of the invention in this case as a basis for distinguishing prior art.  *See, e.g.*, A2970; A3002-03.

"Multi-level security" refers to nesting encrypted objects within other encrypted objects to create layers of encryption.  The specification explains that

"[m]ulti-level security is achieved because encrypted objects may be nested within other objects which are also encrypted, possibly within other objects, resulting in multiple layers of encryption."  A152:4:25-28.  This is illustrated, for example, in Figure 3, which uses keys to illustrate multiple levels of encryption:



**FIG. 3**

A145; A161; A178; A194.

Other drawings illustrate the same concept, A156:11:18–36; A145-46, A152:4:47-49.  All three "Examples of the Distributed Cryptographic Object Method" (A154:7:23-24) in the Detailed Description implement multiple layers of encryption by embedding an encrypted object into another object which is then encrypted.  A154:7:25-156:11:11.

"Multimedia," the patent applicant explained, has a "well-known" meaning, A435 (citing A3022), referring to "computer technology that displays information using a combination of full-motion video, animation, sound, graphics, and text

with a high degree of user interaction."  A3022; *see also* A153:5:13-16 ("Examples of multi-media objects would include a file that contained **two or more** of the following:  sound objects, video objects, graphic V, text objects, chart objects, table objects, and form objects.").[1]

During prosecution, the examiner rejected claim 1 of what became the '702 patent—the only claim pending at the time—as indefinite under 35 U.S.C. § 112, ¶ 2, because, the examiner stated, "it is unclear what is meant by 'multi-level multimedia security'" in the context of the patent.  A348.  To overcome that invalidity rejection, the applicant amended the specification "to more clearly explain" the phrase.  A435.  The amendment clarified that "[m]ulti-level security is achieved **because** encrypted objects may be nested within other objects **which are also encrypted**, possibly within other objects, resulting in **multiple layers of encryption**."  A427; *see also* A152:4:25-28.

In that same amendment, the applicant defined "multimedia"—the "invention encrypts any object" so as to allow the invention to "encompass[] **all** forms of media":

> Multimedia security is achieved because **objects** are encrypted. Where other encryption systems encrypt only files or other data, the system of the present invention encrypts any object, **encompassing all forms of media**.

---

[1] All emphasis is added unless otherwise indicated.

A427; A152:4:28-32.  In response to the indefiniteness rejection, the applicant also represented to the Patent Office that "the terms 'object' and 'Multi-level multimedia security' … are well known to those of ordinary skill in the art," citing to The PC User's Essential Accessible Pocket Dictionary by Peter Dyson.  A435.  The cited Dyson Dictionary defines "multimedia" as "a computer technology that displays information using a combination of full-motion video, animation, sound, graphics and text with a high degree of user interaction."  A3022.  In view of that *definition* and the applicant's explanation, the examiner withdrew the indefiniteness rejection.  A442-43.

### B.    District Court Proceedings

On February 5, 2010, TecSec sued IBM, eBay, Cisco, SAS, Sun (now Oracle America), Oracle, PayPal, SAP America, SAP AG, Sybase, Software AG, Inc., Software AG, and Adobe, alleging infringement of 11 patents by dozens of products.  A2648-2730.  In June 2010, in response to motions from TecSec and defendants, the district court ordered TecSec to proceed first against IBM and eBay, while TecSec's claims against the others were stayed.  A2731 (order), A1743-44 (transcript).  The court later dismissed TecSec's claims against eBay without prejudice.  A2732.

After discovery, IBM moved for summary judgment of noninfringement of the four DCOM patents and two others.  IBM's summary judgment motion led

with claim construction arguments, specifically addressing "multi-level …
security" and "multimedia," A1799-1806 (opening brief), A2597-2601 (reply).
TecSec did not dispute that the preamble containing those terms is a limitation.
Instead, TecSec advanced competing constructions of "multi-level … security" and
"multimedia," A1849-58, and contended that "the dispute between the parties is
relatively narrow." A1849-50.

The district court granted IBM's motion. A3. The district court announced
its ruling before issuing a full opinion "[t]o avoid any unnecessary expenditure of
time and resources by the parties in preparing for trial," A1-2, and explained its
reasoning in a later opinion. A3-66.

The district court began its noninfringement opinion with claim
construction. Although the parties disputed several terms, the district court
"construe[d] only those … strictly necessary to the resolution of the parties'
motions." A8. For the DCOM patents, the district court thus construed only
"multi-level … security" and "multimedia":

> The Court will construe only those terms that are ***strictly necessary to
> the resolution of the parties' motions***. Specifically, in addressing the
> infringement claims for the '702 family of patents, the Court will
> construe the term "multi-level multimedia security," providing a
> construction for "multi-level … security" and "multimedia" in turn.

*Id.*

The district court addressed the claim construction arguments at length, reviewing the claims, specification and prosecution history.  A8-22.  The court concluded that "multi-level … security" means "security achieved when encrypted objects are nested within other objects which are also encrypted, possibly within other objects, resulting in multiple layers of encryption."  A20.  And "multimedia" refers to "a computer technology that displays information using a combination of full-motion video, animation, sound, graphics, and text with a high degree of user interaction."  A20-21.  Those constructions, the court explained, are consistent with the intrinsic evidence, including explicit statements to the Patent Office to distinguish prior art and to respond to indefiniteness rejections addressed specifically to those terms.  A8-22.

After construing the claims, the district court turned to TecSec's infringement allegations and held that, "despite extensive discovery, TecSec has failed to identify any actual instance of infringement by either IBM or any of its customers."  A23.  IBM was thus entitled to summary judgment under the principles set forth in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A22-38.  "[P]laintiff's allegations are untenable as a matter of law," the district court held, "because there is no genuine dispute that IBM's accused products do not meet all of the required claim limitations of the DCOM patents."  A38.  Among the reasons the district court gave for rejecting TecSec's infringement claims was that the

11

accused IBM products did not provide "multi-level multimedia security," as the district court had construed those terms.  A39-42.

The district court held that some of the claims containing means-plus-function limitations (those claims also recite "multi-level multimedia security") were not infringed for the additional reason that "TecSec failed to identify sufficient corresponding structure for each of [the] means-plus-function limitations, and failed to compare the corresponding structure to any allegedly equivalent structure in IBM's accused systems."  A48; A47-52.  TecSec failed to respond to interrogatories requesting that TecSec identify structure corresponding to the means-plus-function elements of its claims.  A50 (citing A3025-26).  And, in its opposition to IBM's summary judgment motion, TecSec identified terms in the specification that were not "structures" at all, but rather further recitations of generic functions untethered to the claims.  A50.

Finally, the court held that IBM was entitled to summary judgment of noninfringement of two other patents not at issue in this appeal.  A52-65.  The district court entered judgment, A67-68, and TecSec appealed.

## C.    Previous Appeal

TecSec raised the same claim construction issues that it raises here.  *See* TecSec Opening Brief, No. 2011-1303, 2011 WL 6999962, at *16-27 (June 6, 2011) ("multi-level … security"); *id.* at *27-31 ("multimedia"); *id.* at *28-36

(means-plus-function claims); TecSec Reply Brief, No. 2011-1303, 2011 WL 4542781, at *2-8 (Sept. 16, 2011) ("multi-level … security"); *id.* at *8-9 ("multimedia"); *id.* at *9-12 (means-plus-function claims).  And TecSec disputed other aspects of the district court's opinion relating to the DCOM patents.  IBM argued that the judgment could be affirmed because there was no material dispute as to noninfringement under the district court's constructions of "multi-level … security" and "multimedia," *see, e.g.*, IBM Brief, 2011 WL 3796925, at *42 (Aug. 4, 2011), and because of TecSec's failure to meet its burden to show evidence raising a genuine issue of direct or indirect infringement.  *Id.* at *23.

At argument, the panel asked whether it was necessary to reach claim construction to affirm.  TecSec's counsel argued that it was, primarily so that the Court could address the merits of its claims against IBM.  Oral Arg. at 32:49-33:06, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-1303/all ("I'd like to address the question of whether you need to go ahead and construe these claims.  First, as a … preliminary matter, ***I don't know how the Court can do this analysis without doing it***.").  TecSec added that it was also necessary to reach claim construction because of TecSec's claims against other defendants.  Oral Arg. at 33:14-33:35 ("[T]here are other defendants that are in this case, and that's why this claim construction is obviously terribly important to us …

13

Multilevel security needs to be construed, multimedia needs to be construed… in order for this case… to go forward in an orderly fashion.").

The Court affirmed under Rule 36. 446 Fed. Appx. 882.

### D. Subsequent District Court Proceedings

After this Court's mandate issued, the district court held a status conference. TecSec and IBM informed the district court that they had settled. A3056-57.

TecSec added that it "would like to have another attempt to go to the Federal Circuit on the claim construction issues related to the DCOM patents." A3058. Even though it had just appealed those same claim constructions and this Court had just affirmed the judgment of noninfringement, TecSec sought another bite at the apple. Knowing it could not prevail under the constructions the district court had adopted and that it had just appealed, TecSec proposed to stipulate that it could not prove that any of the remaining defendants infringed any of the four DCOM patents based on the district court's claim constructions, and that its claims with respect to the other seven patents would be stayed. A3057-60. TecSec did not suggest that any further discovery or factfinding was necessary, but that the record as it stood was sufficient for an immediate second appeal. TecSec proposed that judgment of noninfringement be entered in favor of the remaining defendants based on a stipulation with the following terms:

(1) No defendant infringes any DCOM patent, for any accused product or for any product that could have been accused of infringement, under the district court's claim constructions.  A3074.

(2) Under the district court's construction of "multimedia," no defendant infringes.  A3084 ¶ 5; A3085 ¶ 9.

(3) Under the district court's construction of "multi-level … security," "at least PayPal has not infringed and does not infringe…"  A3084 ¶ 6.  Should this Court reverse or modify the district court's construction of "multimedia," but affirm the district court's construction of "multi-level ... security," TecSec would "advise the [District] Court [at that time] as to whether [TecSec] contends that any of the remaining Defendants infringe the DCOM patents."  A3085 ¶ 9.  Defendants reserved their right to argue that TecSec was precluded from taking a second appeal to this Court to challenge the same claim constructions it challenged before.  A3098 n.8.

The district court accepted TecSec's stipulation, entered judgment of noninfringement as to the DCOM patents, stayed TecSec's claims relating to the seven other patents, and certified its judgment for appeal under Fed. R. Civ. P. 54(b).  A69-71.  TecSec now appeals.

## SUMMARY OF THE ARGUMENT

**1.**    Collateral estoppel and the mandate rule preclude TecSec from bringing a second appeal to challenge the same claim constructions in the same case.  TecSec had a full opportunity in its prior appeal to make the arguments it makes here.  TecSec argues it should get a second bite at the apple because, according to TecSec, the claim constructions were not "necessary" to the district court's prior judgment of non-infringement.  TecSec ignores the District Court's statement in its opinion that the constructions TecSec now challenges were "strictly necessary" to the resolution of TecSec's infringement claims against IBM. TecSec presented full briefing to this Court on those issues in its previous appeal and lost.  It does not get a "do-over" with different defendants in the same case.

**2.**    Should the Court reach the merits, the intrinsic evidence demonstrates that the district court properly construed the claims.  In response to an indefiniteness rejection, TecSec provided the Patent Office with a dictionary definition for "multimedia."  The district court's construction adopts TecSec's definition and is consistent with the specification.  Precedent consistently holds that, when an applicant defines a claim term in this manner, that definition controls, and the patentee may not disavow that definition in litigation.

**3.**    The specification describes "multi-level … security" with overwhelming consistency as the nesting of encrypted objects within encrypted

16

objects to provide multiple layers of security.  TecSec used the concept of nested encrypted objects to distinguish the prior art, and now attempts in litigation to ignore most of the specification and to argue for a claim construction that fits more closely with the patent's description of the prior art than with what TecSec described as its invention.  The Court should reject TecSec's attempts to run away from its prior representations, which the public is entitled to rely upon.

**4.**    All claims contain the "multimedia" and "multi-level … security" terms, and so the Court need not reach TecSec's arguments regarding the means-plus-function claims.  If it does, however, it should affirm the district court's conclusions with respect to those claims.  TecSec invoked 35 U.S.C. § 112, ¶ 6 by describing numerous claim elements in functional terms, but failed to meet its burden to identify structures corresponding to those functions in the manner the law requires.

## STANDARD OF REVIEW

This Court reviews claim construction *de novo*.  *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455-56 (Fed. Cir. 1998) (en banc).  "In conducting this *de novo* review," the Court "'begin[s] with and carefully consider[s] the trial court's work.'"  *Apple Computer, Inc. v. Articulate Sys., Inc.*, 234 F.3d 14, 20 (Fed. Cir. 2000) (quoting *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 713 (Fed. Cir. 1999)); *see also Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1344-45

(Fed Cir. 2010) ("'[C]ommon sense dictates that the trial judge's view will carry weight.'" (quoting *Cybor*, 138 F.3d at 1462 (Plager, J., concurring))); *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005) (same).

## ARGUMENT

### I.    TecSec is Precluded from Challenging the District Court's Claim Construction for a Second Time

TecSec already has appealed the same claim constructions in the same district court order, and lost.  In its prior appeal, TecSec presented full briefing challenging the district court's constructions of "multi-level … security," "multimedia," and the means-plus-function claims.  *See* Opening Brief, No. 2011-1303, 2011 WL 6999962, at *16-27 (June 6, 2011) ("multi-level … security"); *id.* at *27-31 ("multimedia"); *id.* at *28-36 (means-plus-function claims); Reply Brief, No. 2011-1303, 2011 WL 4542781, at *2-8 (Sept. 16, 2011) ("multi-level … security"); *id.* at *8-9 ("multimedia"); *id.* at *9-12 (means-plus-function claims). This Court affirmed.  After having had a full and fair opportunity to litigate those issues, the related doctrines of collateral estoppel and the mandate rule preclude TecSec from taking a second appeal in the same case to make the same arguments about the same portions of the same district court opinion.

## A.    Collateral Estoppel Precludes TecSec From Rearguing Claim Construction

"Collateral estoppel, also known as issue preclusion, shields a defendant from having to litigate issues that have been fully and fairly tried in a previous action and decided adversely to a party." *Pharmacia & Upjohn Co. v. Mylan Pharms., Inc.*, 170 F.3d 1373, 1379 (Fed. Cir. 1999). Collateral estoppel has five elements: "(1) that the issue sought to be precluded is identical to one previously litigated…; (2) that the issue was actually determined in the prior proceeding…; (3) that the issue's determination was a critical and necessary part of the decision in the prior proceeding …; (4) that the prior judgment is final and valid …; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the previous forum …" *Westmoreland Coal Co. v. Sharpe*, --- F.3d ---, 2012 WL 3553629, at *11 (4th Cir. Aug. 20, 2012).

Those elements are met here. TecSec raises identical claim construction issues—indeed, TecSec asks the Court to review the same parts of the ***same district court opinion*** as in the previous appeal. The disputed claim constructions were clearly determined in a final, appealable judgment for IBM, and TecSec had a full and fair opportunity to litigate them, both before the district court and this Court. In fact, the only element of collateral estoppel that TecSec disputes is whether the "claim construction issues were … necessary to the district court's judgment. TecSec Br. 15.

TecSec asserts that collateral estoppel should not apply because it contends that the district court's claim construction was not "the reason for the loss in the prior case on the issue of infringement," citing only *In re Freeman*, 30 F.3d 1459, 1469 (Fed. Cir. 1994). TecSec Br. 18-19.[2] That argument is without merit. The district court itself addressed the question of whether its claim constructions were necessary to its judgment, making clear it had construed "only those terms … ***strictly necessary***" to resolve summary judgment. A8. TecSec entirely ignores the district court's unambiguous statement, asking this Court to find exactly the opposite, suggesting that the various findings of non-infringement that immediately followed the district court's claim construction in no way turned on its claim construction. That makes no sense.

It is no surprise that the district court viewed construction of the key terms to be "necessary," because infringement analysis is inherently a two-step process that necessarily begins with claim construction. Both this Court and the Supreme Court have observed that to resolve an allegation of infringement the claims must ***first*** be construed without reference to the accused product, and ***then*** the construed claims are compared to the accused product. The two steps are distinct—the threshold issue of claim construction is a question of law for the Court, and the ensuing

---

[2] *Freeman* actually supports defendants. There a patentee litigated an issue of claim construction in a prior district court proceeding and lost, and this Court held that the patentee was collaterally estopped from relitigating that same claim construction issue in an administrative reexamination proceeding. 30 F.3d at 1469.

infringement analysis is a question of fact.   *See, e.g.*, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 385 (1996); *Intellectual Sci. & Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1183 (Fed. Cir. 2009).   Claim construction is thus a prerequisite to determining infringement or noninfringement.   *See, e.g.*, *Cammeyer v. Newton*, 94 U.S. 225, 231 (1876) (Infringement "cannot be understandingly determined without first ascertaining the true nature of the invention as embodied in the claims of the patent, when the same are properly construed in view of the descriptive portions of the specification."); *AbTox, Inc. v. Exitron Corp.*, 122 F.3d 1019, 1023 (Fed. Cir. 1997) ("The test for patent infringement ***requires*** both proper interpretation of the claim scope and proper comparison of the claims with the accused device."); *SRI Int'l v. Matsushita Elec. Corp. of Am.*, 775 F.2d 1107, 1118 (Fed. Cir. 1985) (en banc) ("It is only ***after*** the claims have been ***construed without reference to the accused device*** that the claims, as so construed, are applied to the accused device to determine infringement." (original emphasis)). Indeed, TecSec's counsel argued in the previous appeal that the district court could not have determined whether TecSec's alleged proof of infringement was or was not sufficient without construing the claim limitations at issue, nor could this Court have affirmed that determination, without determining the proper construction of the claims.   Oral Arg. at 32:49-33:06, 33:14-33:35, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2011-1303/all

That is precisely the approach the district court followed here, as the structure and reasoning of its opinion amply demonstrate. The district court first performed claim construction as a threshold matter, observing that the construed terms—"multi-level … security" and "multimedia"—were "***strictly necessary***" to the resolution of the summary judgment motions. A8. Then, having construed the claims that were essential to its analysis, the district court addressed infringement. A22-42. At ***that*** point in its analysis, it had two different rationales for finding IBM was entitled to summary judgment. The court looked at TecSec's evidence and found it insufficient as a matter of law to meet the elements of the claims it had just construed, thus entitling IBM to summary judgment. A22-38. Notably, the court did not say claim construction was unnecessary due to a failure of proof; it said the opposite—the construed terms were "strictly necessary" to deciding the motions for summary judgment. A8. And the court also reviewed IBM's arguments and found that IBM also was entitled to summary judgment because its accused products did not meet all of the required claim limitations that had just been construed, either alone or in combination. A39-42.

Claim construction was, thus, in no way an "incidental" issue. *See Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1572 & n.8 (Fed. Cir. 1983). This is not a case where claim construction was merely "supportive of" the judgment, but rather was "essential" to it. *In re Microsoft Corp. Antitrust Litig.*,

355 F.3d 322, 327 (4th Cir. 2004). And even if it were not, "the requirement that a finding be 'necessary' to a judgment does not mean that the finding must be so crucial that, without it, the judgment could not stand. Rather, the purpose of the requirement is to prevent the incidental or collateral determination of a nonessential issue from precluding reconsideration of that issue in later litigation." *Mother's Rest.*, 723 F.2d at 1571 & n.8 (granting preclusive effect where an issue "was fully litigated" in the previous action, and remarking that although the final judgment provided "no explicit rationale" for its result, "***the mere existence of another possible ground for a judgment does not deprive the factual determination upon which the decision actually rested of preclusive effect.***"); *Ritter v. Mount St. Mary's College*, 814 F.2d 986, 993-94 (4th Cir. 1987) (collateral estoppel did not apply to "non-essential dicta and ancillary findings … because the litigants might not have concentrated their energies and resources upon the full development and presentation of these issues"). Here, there is no suggestion that TecSec did not concentrate its energies on the full development of the claim construction issues that were previously before the district court and this Court.

To be sure, one can imagine that if the district court had construed *other* claim terms that were not dispositive of infringement, TecSec might not be precluded from challenging those constructions in later litigation. Or if, for

example, TecSec had ultimately prevailed on its infringement claims, notwithstanding TecSec's disagreement with the underlying claim construction, TecSec might not be precluded from disputing the claim construction in a later litigation. *See, e.g.*, *Jackson Jordan, Inc. v. Plasser Am. Corp.*, 747 F.2d 1567, 1577 (Fed. Cir. 1984). Here, however, the district court's constructions of "multi-level … security" and "multimedia" were not incidental or collateral, but "strictly necessary" to the judgment of noninfringement. A8. TecSec may not litigate them again.

TecSec asks the Court to presume—contrary to hornbook patent law—that the district court (and this Court, in turn, on appeal) entirely bypassed the first step of the infringement analysis and examined TecSec's failures of proof divorced from any claim construction at all. In other words, TecSec asks this Court to treat as ***unnecessary*** what the district court said was "strictly necessary." To state such a proposition is to refute it.

In any event, here collateral estoppel arises in the context of the ***very same case***—TecSec itself noted at argument in the previous appeal that whatever this Court did would have ramifications for the remaining defendants in this case. Oral Arg. at 33:14-33:35. Under these circumstances, collateral estoppel applies even as to alternative holdings. *See Ritter*, 814 F.2d at 992; *see also Microsoft*, 355 F.3d at 328. Where there is a prior ruling ***in the same case***, "if the parties were not

bound by the facts found in the very same case which they were litigating, then the judgments of courts issued during trial would become irrelevancies." *Ritter*, 814 F.2d at 992. That rule applies to this case and forecloses TecSec's appeal. TecSec has already had a full and fair opportunity ***in this very case*** to litigate these concededly dispositive issues of claim construction, in the district court and on appeal to this Court. TecSec is not entitled to a second bite at the apple.

### B.     The Mandate Rule Precludes TecSec From Rearguing Claim Construction

The mandate rule similarly precludes relitigating in a second appeal an issue already decided in a previous appeal in the same case, where the appellant has already had a full and fair opportunity to present its arguments. In *Engel Industries, Inc. v. Lockformer Co.*, 166 F.3d 1379 (Fed. Cir. 1999) this Court explained that "[u]nless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and ***thus are precluded from further adjudication***." *Id.* at 1383. That is the law throughout the circuits, including the Fourth. *Id*. (citing cases from nine other circuits); *Doe v. Chao*, 511 F.3d 461, 464-65 (4th Cir. 2007)*; Moore v. Bennette*, 517 F.3d 717, 727 (4th Cir. 2008). As this Court made clear in *Engel*, "the issues actually decided— those within the scope of the judgment appealed from, minus those explicitly reserved or remanded by the court—are foreclosed from further consideration." 166 F.3d at 1383. That should be the end of the matter here: The claim

25

constructions TecSec disputes in this appeal were certainly "within the scope of the appealed judgment" in the previous appeal, and claim construction was not "reserved or remanded by the court." Those issues are thus "foreclosed from further consideration" here. *Id*.

TecSec apparently attempts to avoid this result on the ground that the district court cited TecSec's evidentiary shortcomings as an ***additional*** reason for granting summary judgment of noninfringement. But that is not the law, and TecSec should not be in a better position in this appeal than it would otherwise be because (1) its infringement claims against IBM failed for multiple reasons instead of one, (2) it has not built a record supporting its infringement claims against the remaining defendants, and (3) it has appealed the same claim construction twice instead of once.

As to TecSec appealing the same claim constructions twice, *Engel* explained that one of the policies underlying the mandate rule is the judiciary's antipathy toward piecemeal appeals. The mandate rule seeks to prevent appellants from "present[ing] appeals in a piecemeal and repeated fashion," which "would lead to the untenable result that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." 166 F.3d at 1382-83 (citation and internal quotation marks omitted); *see generally In re Thornburgh*, 869 F.2d 1503, 1507 (D.C. Cir. 1989) ("A strong

congressional policy against piecemeal appeals permeates the federal judicial system."); *Woodard v. Sage Prods., Inc.*, 818 F.2d 841, 847 (Fed. Cir. 1987) (similar).  But that is exactly what TecSec seeks here.  Having had one bite at the apple, TecSec does not get a second.  The Court need not entertain TecSec's repeated appeal of identical issues and can affirm the judgment below without any need to reach the merits for the second time.

## II.  The District Court Correctly Construed "Multi-Level Multimedia Security"

Should the Court reach the merits, it should affirm the judgment of the district court because the court correctly construed "multi-level multimedia security," and TecSec concedes that it cannot prove infringement by any defendant under the district court's construction.

As a preliminary matter, TecSec makes two passing statements that warrant a response.  First, TecSec complains that the district court erred by analyzing "multi-level security" and "multimedia" separately.  TecSec Br. 5, 19.  TecSec does not argue that anything follows from that purported error, however, other than that the district court should have construed "multi-level … security" and "multimedia" in the way TecSec prefers.  Nor could it, as TecSec itself has argued in other litigation that the phrase "multi-level multimedia security" includes a "multi-level security" limitation and a "multimedia security" limitation.  A3037-39.

Second, TecSec's invitation in a footnote for the Court to find, *sua sponte*, that the preamble is not a limitation is meritless and waived.  TecSec Br. 5 & n.4. "In considering whether a preamble limits a claim, the preamble is analyzed to ascertain whether it states a necessary and defining aspect of the invention, or is simply an introduction to the general field of the claim."  *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1343 (Fed. Cir. 2006).  As the district court explained, A10-12, it is beyond reasonable dispute that the preamble is a limitation here.  The patent specification repeatedly describes and stresses the concept of "multi-level multimedia security" as a defining aspect of the alleged invention, *see* § II.B.1, *infra*, and TecSec relied on that during prosecution and in this litigation to distinguish prior art.  A11-12.  The preamble is thus a limitation.  *See, e.g., Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004); *Catalina Mktg., Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). TecSec's contrary suggestion is waived.[3]  *CSIRO v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1370-71 (Fed. Cir. 2008).

---

[3] Indeed, TecSec's consistent position throughout this litigation and in prior litigation has been that the preamble *is* a limitation.  In the district court and in the previous appeal in this case, TecSec and IBM agreed that the preamble was a limitation, and offered competing constructions.  *See, e.g.*, A1849-50 ("it is apparent that the dispute between the parties is relatively narrow"); IBM Brief, No. 2011-1303, 2011 WL 3796925, at *42 (Aug. 4, 2011) ( "[t]here is no dispute that this phrase limits the claim scope."); A11-12 (noting TecSec's reliance on the preamble to distinguish prior art in prosecution and in litigation); A2912 ("This embedding of encrypted objects within other objects creates the '***multi-level***

A.    **The District Court Correctly Construed "Multimedia"**

1.    **The District Court's Construction is Consistent with the Express Definition Provided to the Patent Office, and With the Specification**

Inventors who define terms explicitly in the specification or in prosecution cannot recant those definitions in litigation when they become inconvenient. *CVI/Beta Ventures, Inc. v. Tura LP*, 112 F.3d 1146, 1158 (Fed. Cir. 1997) ("[T]hrough statements made during prosecution or reexamination an applicant … may commit to a particular meaning for a patent term, which meaning is then binding in litigation."). This is particularly true when the applicant provides the definition to the Patent Office in response to an indefiniteness rejection. *Trading Techs., Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1354-55 (Fed. Cir. 2010).

In *Irdeto Access, Inc. v. Echostar Satellite Corp.*, 383 F.3d 1295 (Fed. Cir. 2004), for example, a patent applicant responded to an indefiniteness rejection by indicating that the terms at issue had no accepted meaning in the art but were defined in the specification. *Id.* at 1298. In litigation, the Court rejected the patentee's later attempt to define those same terms by resort to general-usage dictionaries, *id.* at 1300. "Here," the Court explained, "applicant informed the

---

*security*' that is *essential* to the DCOM Patents."); A1801 (IBM citing examples of TecSec pointing to the preamble in this litigation to distinguish prior art); A3037 ("As explained in more detail below, the terms *'multi-level security'* and *'multimedia security'* are described throughout the patent specifications and give life, meaning and vitality to the claims. Accordingly, the preamble of Claim 1 of both the '702 and '781 patent is properly construed by this Court.").

examiner and all competitors that [the terms] have no accepted meaning in the art and 'are very adequately described in the specification.' ***The applicant's use of those terms in the specification thus controls their scope.***" *Id*. *Irdeto* also rejected the patentee's argument—similar to an argument TecSec makes here— that the prosecution history did not contain any "clear disclaimer" of scope. *Id*. at 1300-03.

This Court consistently has rejected similar attempts by patent litigants to recant definitions they provided to the Patent Office—and thus to the public and their competitors. *See, e.g.*, *J.T. Eaton & Co. v. Atl. Paste & Glue Co.*, 106 F.3d 1563, 1570 (Fed. Cir. 1997) (patentees defined "a plastic flow temperature above 120°F" during prosecution and could not recant that definition in litigation); *Astrazeneca AB v. Mut. Pharm. Co.*, 384 F.3d 1333, 1341-42 (Fed. Cir. 2004) (holding patentee to explicit definition of "solubilizer" provided during prosecution); *Honeywell Inc. v. Victor Co. of Japan, Ltd.*, 298 F.3d 1317, 1323-24, 1328 (Fed. Cir. 2002) (reversing district court's construction of "contiguous," where it improperly modified the inventor's definition taken from a standard English dictionary during prosecution).

Here, the district court's construction of "multimedia"—"a computer technology that displays information using a combination of full-motion video, animation, sound, graphics, and text with a high degree of user interaction"—

comes directly from the definition that TecSec provided to the Patent Office. A20-22. As described above, the applicant responded to—and overcame, A442-43—an indefiniteness rejection based on the phrase "multi-level multimedia security" by pointing to Peter Dyson's *The PC User's Essential Accessible Pocket Dictionary* to define "multimedia." A435 (citing A3022). "Multi-level" is not in that dictionary, and there is no apparent purpose for the patentee to have cited the dictionary other than to provide a definition of "multimedia." A435.

The definition TecSec provided is consistent with definitional language in the specification, where the patents state that "examples of multi-media objects would include a file that contained **two or more of the following**: sound objects, video objects, graphic V, text objects, chart objects, table objects, and form objects." A153:5:13-16. As this Court explained in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1316 (Fed. Cir. 2005) (en banc), when the patent explicitly defines a claim term, "the inventor's lexicography governs." (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). The district court's construction should be upheld and the judgment of noninfringement should be affirmed.

### 2.    TecSec's Arguments are Without Merit

TecSec has no real explanation for why it should not be held to the definition of "multimedia" it provided to the Patent Office to respond to an

indefiniteness rejection.  Moreover, as the district court noted, *see* A21, TecSec's arguments would effectively read the word "multimedia" out of the claims.

Regarding the prosecution history, TecSec simply argues that "it is too great a leap to conclude" that when the applicant pointed the patent examiner to a dictionary in response to an ***indefiniteness*** rejection, that the applicant intended the examiner to look to that dictionary to define the term at issue.  TecSec Br. 36.  The argument is self-defeating.  The prosecution history of a patent is intrinsic evidence relevant to claim construction.  *Graham v. John Deere Co.*, 383 U.S. 1, 33 (1966); *Phillips*, 415 F.3d at 1317.  Statements in prosecution are especially probative where, as here, the applicant directly addresses the meaning of a disputed claim term.  *Trading Techs.*, 595 F.3d at 1354-55 (argument made in response to indefiniteness rejection); *CVI/Beta Ventures*, 112 F.3d at 1158; *Honeywell v. Victor*, 298 F.3d at 1323-24, 1328.  And, as described above—§ II.A.1, *supra*—where the patentee explicitly defines a term in prosecution in response to an indefiniteness rejection, that definition is ***dispositive***.

TecSec's remaining arguments ignore the binding nature of its statements to the Patent Office and are thus irrelevant in addition to being meritless.

*First*, TecSec argues that "the patentee did not use 'multimedia' as a limiting term, but rather an expansive term, reflecting a system that can protect any kind of data."  TecSec Br. 33.  As noted above, TecSec has already conceded that the

preamble is a limitation, and taken that position throughout proceedings in the district court, the previous appeal of the same construction, and even other litigation. Its argument that "multimedia" is "an expansive term" is essentially an argument that the district court erred by giving the term any meaning at all, and thus is waived. *CSIRO*, 542 F.3d at 1370-71; *Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1331 (Fed. Cir. 2009); *Sage Prods., Inc. v. Devon Indus., Inc.*, 126 F.3d 1420, 1426 (Fed. Cir. 1997). Moreover, claim terms should be construed so as not to render them meaningless or "surplusage." *See, e.g., Texas Instruments, Inc. v. ITC*, 988 F.2d 1165, 1171 (Fed. Cir. 1993) ("[T]o construe the claims in the manner suggested by [Plaintiff] would read an express limitation out of the claims. This, we will not do..."); *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) (similar). TecSec cannot demonstrate error in the district court's construction of "multimedia" by arguing that the district court should have disregarded that term altogether.

*Second*, TecSec contends that the district court's construction is inconsistent with the district court's construction of "object." TecSec Br. 32-33. TecSec argues that "a construction of 'multimedia' that limits the invention to only one specific kind of object … cannot be correct." *Id.* There is no inconsistency and TecSec mischaracterizes the district court's decision. "Multimedia" and "object" are separate terms. "Multimedia" reflects that the invention is directed to

providing multilevel security for particular types of "objects," which the specification refers to as "multi-media objects" (in the context of a paragraph that defines "Multi-Level Multimedia Security," A153:5:8-9).   The specification explains that "multi-media objects" include "a file that contained *two or more of the following*:  sound objects, video objects, graphic V, text objects, chart objects, table objects, and form objects."  A153:5:13-16.  If the patentee wished to claim "multiple objects"—which is essentially what TecSec argues "multimedia" should be construed to mean—it could done so, but instead it used the term "multimedia" as a *further limitation* on the claims.  A435.  TecSec attempts to read the term "multimedia" out of the claims, A21, and ignores the text of patent and its statements in prosecution.

*Third*, TecSec contends that "the district court's construction excludes every embodiment," pointing out that three examples in the '702 patent describe encryption and other processing of "plain text" objects.  TecSec Br. 33-34.  As noted above, however, the patentee explicitly defined "multimedia" in the specification and the prosecution history.  *See, e.g.*, A153:5:13-16.  If there is any inconsistency between TecSec's disclosure of examples applied to plain text objects and its actual claims to "multi-level multimedia security," then that suggests a deficiency in TecSec's disclosure, not a problem with the district court's claim construction.  More generally, TecSec cannot rely on specific embodiments

to defeat clear statements to the Patent Office and the public about the meaning of "multimedia." *See Sinorgchem Co. v. ITC*, 511 F.3d 1132, 1138 (Fed. Cir. 2007) ("Where, as here, multiple embodiments are disclosed, we have previously interpreted claims to exclude embodiments where those embodiments are inconsistent with unambiguous language in the patent's specification or prosecution history."). TecSec is also incorrect to argue that the construction excludes all embodiments. While the examples in the specification begin with "plain text" objects, they describe the encrypting and embedding of those objects within *other* encrypted objects, which may or may not also be plain text objects. As the '702 patent explains with respect to Figure 4, an encrypted container object containing nested encrypted objects "can act as a secure package." A156:11:40-48.

*Finally*, TecSec argues that the prosecution history described above is insufficiently clear to amount to "disclaimer." TecSec Br. 34-36. As an initial matter, whether or not the applicant's representations to the Patent Office—which are part of the intrinsic record—constituted a "disclaimer" or a disavowal," the Court is entitled to rely on them in construing the claims. *See 800 Adept, Inc. v. Murex Secs., Ltd.*, 539 F.3d 1354, 1364-65 (Fed. Cir. 2008) ("[W]e do not consult the prosecution history for [disclaimer]. We simply use it as support for the construction already discerned from the claim language and confirmed by the written description..."). It is well established that "[t]he public notice function of a

patent and its prosecution history requires that a[n applicant] be held to what he declares during the prosecution of his patent." *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003). TecSec's argument to the contrary is the same as that rejected in *Irdeto*, where a patentee asserted that it should not be bound by its statement to the Patent Office in response to an indefiniteness rejection. 383 F.3d at 1300-01; *see also Hockerson-Halberstadt, Inc. v. Avia Grp. Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("Were we to accept [the patentee's] position, we would undercut the public's reliance on a statement that was in the public record and upon which reasonable competitors formed their business strategies."). The record here is unambiguous. The examiner issued an ***indefiniteness rejection***, stating that "it is unclear what is meant by 'multi-level multimedia security'" in the context of the patent. A348. In response, TecSec amended its specification, and pointed the examiner ***to a specific dictionary***, stating that the terms at issue were "well known to those of ordinary skill in the art." A435 (citing Peter Dyson, <u>The PC User's Essential Accessible Pocket Dictionary</u> (A3022)). TecSec, therefore, overcame ***indefiniteness*** by pointing the examiner to a dictionary ***definition***.

Simply put, TecSec acted as its own lexicographer, making that dictionary definition part of the intrinsic record. Yet it now attempts to argue that it is error to presume that TecSec intended that the examiner actually open that dictionary to

look up the words that were the subject of the indefiniteness rejection and rely on their "well-known" meaning. TecSec asserts that the applicant "cit[ed] generally to a dictionary without specifically identifying any particular definition," and that "the applicant never specifically incorporated the dictionary definition of 'multimedia.'" TecSec Br. 35. In an alphabetically-organized dictionary, however, it is of no significance that TecSec did not point the examiner to the particular page. More generally, the prosecution history here is *consistent* with the specification, and TecSec's disclaimer arguments are thus beside the point. *See 800 Adept*, 539 F.3d at 1364-65 (prosecution history "support[ed] … the construction already discerned from the claim language and confirmed by the written description..."); *N. Am. Container, Inc. v. Plastipak Packaging, Inc.*, 415 F.3d 1335, 1348 (Fed. Cir. 2005) ("The strongest confirmation of the district court's construction of 're-entrant portion,' however, comes from the applicant's own statement in the prosecution history."). There is no issue of disclaimer or disavowal—rather, TecSec told the Patent Office and the public specifically what it meant by "multimedia," as used in the claims, and the public is entitled to rely on that representation. *See Graham*, 383 U.S. at 33 (scope of a patent determined in part "with reference to the file wrapper or prosecution history in the Patent Office.").

The district court correctly construed "multimedia." TecSec concedes that it cannot prove infringement by any defendant under the district court's construction of "multimedia." A69-70. Thus, if this Court affirms that construction, it should affirm, and need not reach TecSec's other arguments.

### B. The District Court Correctly Construed "Multi-Level … Security"

#### 1. The Intrinsic Evidence Supports the District Court's Construction

The district court correctly construed "multi-level … security" to mean that "encrypted objects are nested within other objects which are also encrypted, possibly within other objects, resulting in multiple layers of encryption." A12-13.

*First*, the district court's construction is consistent with the claim language, particularly as the applicant explained that language to the Patent Office when asked. A13-14. During prosecution, the examiner stated that "it is unclear what is meant by 'multi-level multimedia security.'" A348. In response, TecSec amended the specification "to more clearly explain" the claim language. A435. The amendment stated—consistent with the district court's construction—that "[m]ulti-level security is achieved *because encrypted objects may be nested within other objects which are also encrypted*, possibly within other objects, resulting in *multiple layers of encryption*." A427; A152:4:25-28. The examiner withdrew the rejection. Such statements are relevant intrinsic evidence, and are especially

38

probative where, as here, they directly address the meaning of a particular claim term. *Trading Techs.*, 595 F.3d at 1354-55; *Honeywell v. Victor*, 298 F.3d at 1323-24, 1328.

*Second*, the specification provides overwhelming support for the district court's construction. This Court and the Supreme Court have consistently recognized the longstanding principle that claims are to be interpreted in light of the specification. *Phillips*, 415 F.3d at 1315-16 (citing cases). As *Phillips* explained, the Patent Act links the requirement of claims, 35 U.S.C. § 112, ¶ 2, with the requirement of a written description of the claimed invention in "full, clear, concise, and exact terms." *Id.* ¶ 1; *see Phillips*, 415 F.3d at 1316. It is for those reasons that the specification "is the single best guide to the meaning of a disputed claim term," and "[u]sually, it is dispositive" of claim construction. *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Here, the specification repeatedly and consistently characterizes the invention as nesting or embedding encrypted objects within other encrypted objects. A16-17. In description after description and example after example, the specification teaches and requires that critical feature.

The Summary of the Invention explains that an objective is embedding objects within other objects "resulting in an access hierarchy for users of the system." A152:3:21-24. The patent further explains that once encrypted objects

are embedded in a container object, the container object is also encrypted. A153:5:32-41 ("After the Encrypted object(s) is/are embedded in a standard container object(s) **10 *and the container object(s) 10 is/are encrypted***, the original encrypted object(s) and the ***new encrypted container object(s)*** is/are ready for transport.").

Likewise, in a passage describing "[t]he current implementation of the DCOM at the application layer," A153:6:40-41, the patent describes the use of "the Object-Oriented Key Manager" ("OOKeyMan"), A153:6:40-43, and sets out a list of steps for using OOKeyMan, where the second step is "User Encrypts Object(s) with OOKeyMan," the third and fourth step involve embedding that object into a container object, and the fifth step is "***Encrypt Container Object***." A154:7:7-20.

The Detailed Description also contains a subsection titled "Examples of the Distributed Cryptographic Object Method." A154:7:22-23. No example has an unencrypted container object. All three examples in that section implement multi-layer encryption by embedding an encrypted object into another object which is then encrypted. The patent explains the examples in those terms. A154:7:50-52 ("The first example shows the ability for OOKeyMan to securely manage and track single or multiple embedded encrypted objects ***within other encrypted objects***."); A154:7:54-57 ("The second example shows the ability for OOKeyMan to securely manage and track single or multiple embedded encrypted objects ***within other***

*encrypted objects.*").    And the examples themselves describe multiple layers of encryption, occurring first at steps 1(C)-1(J), and second at step 1(K)(ii). *See* A154:8:4-33 (Example 1); A155:9:14-42 (Example 2); A155:10:19-47 (Example 3).

The drawings are to the same effect.  Figures 3 and 4 show an encrypted object within a web of embedded encrypted objects nested within other encrypted objects, resulting in multiple layers of encryption.  Figure 3 illustrates the point—it depicts concentric circles with keys used to denote encryption at each layer. Figure 4 similarly depicts encrypted objects nested in other encrypted objects:

> FIG. 3 and FIG. 4 show an encrypted object that contains a web of embedded encrypted objects nested within the other encrypted objects. The object shown in FIG. 3 contains ten embedded encrypted objects at five various levels. The encrypted object embedded in level 5 was embedded in an object in level four, level four objects in level 3 and so on. The plain text object containing the level 5 encrypted object can then be encrypted for further security. This single encrypted object encapsulates all of the data associated with the encrypted objects within it and therefore the entire encrypted object can then be sent out via any transport mechanism supporting binary file transfer.
>
> FIG. 4 shows an encrypted object that contains a web of embedded encrypted objects nested within it. All of the attached embedded encrypted objects are fused together resulting in a single encapsulated encrypted object. The DCOM is powerful enough to dynamically adapt to accommodate N dimensional objects.



FIG. 3    FIG. 4

A156:11:18–36; A145-46.

Similarly, the patent explains that "FIG. 6 shows the present invention used in conjunction with the dynamic structure of a sample organizational chart," A152:4:47-49, resulting in multiple embedded encrypted objects with multiple layers of encryption:



FIG. 6

A148; *see also* A150 (Fig. 8). Where the specification clearly limits the invention to a particular form, it is appropriate to construe the claims consistently with that limitation. *See, e.g.*, *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1329 (Fed. Cir. 2009); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318

(Fed. Cir. 2006). Here, the specification repeatedly and consistently characterizes the invention as nesting or embedding encrypted objects within other encrypted objects. A16-17.

*Third*, TecSec has relied on the "multi-level … security" concept as a separate claim limitation to distinguish prior art that does not use multiple layers of encryption. A2970 (relying on preamble to distinguish prior art); A3002 (arguing that the Follendore '707 patent does not describe "multi-level … security"); A2912 (TecSec's summary judgment brief arguing that "[t]his embedding of encrypted objects within other objects creates the 'multi-level security' that is *essential* to the DCOM Patents.").

## 2. TecSec's New Claim Construction is Waived

TecSec now contends, for the first time, that "multi-level … security" refers to "using a combination of access control and encryption on discrete pieces of data called objects." TecSec Br. 19, 26, 36. In the district court, however, TecSec argued that the correct construction of the preamble was "[s]ecurity provided by the nesting of individually encrypted objects." A1851, TecSec Br. 26. That construction does not require any type of "access control" other than encryption. TecSec does not acknowledge that it has changed its claim construction position, but attempts to bury its new argument among its general assertions of "error" by the district court. TecSec cannot now argue on appeal, however, that the district

court erred by failing to reject both IBM's *and TecSec's* proffered claim constructions in favor of a third construction never argued by anyone. *Cordis*, 561 F.3d at 1331 ("[L]itigants waive their right to present new claim construction disputes if they are raised for the first time after trial."); *Sage Prods.*, 126 F.3d at 1426 ("[T]his court does not 'review' that which was not presented to the district court.").

### 3.    TecSec's Arguments Are Without Merit

*First*, TecSec takes issue with the district court's use of the phrase "essence of the invention" at one point in its opinion, and uses that reference to spin an argument accusing the district court of ignoring the claim language. TecSec Br. 23-34. To be sure, claim construction based on the "essence" of an invention may be erroneous when divorced from the claim language. *See MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1330-31 (Fed. Cir. 2007) ("[W]e cannot endorse a construction analysis that does not identify a textual reference in the actual language of the claim …"). Here, however, the district court's analysis is plainly directed to determining the meaning of "multi-level … security" as that claim language is used in the patent, not on determining the "essence" of the invention apart from the claim language. A12-20. The district court reviewed the intrinsic evidence and the parties' arguments at length and correctly concluded that, in the context of the intrinsic evidence, the claim term "multi-level …

44

security" referred to "security achieved when encrypted objects are nested within other objects which are also encrypted, possibly within other objects, resulting in multiple layers of encryption." A20. TecSec's caricature of the district court's opinion bears no resemblance to the court's actual analysis, and in any event this Court reviews judgments, not statements in opinions. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1540 (Fed. Cir. 1983); *Gen. Mills, Inc. v. Hunt-Wesson, Inc.*, 103 F.3d 978, 980-81 (Fed. Cir. 1997).

*Second*, TecSec's contention that "multi-level … security" refers to "a combination of access control and encryption," TecSec Br. 19, cannot be right, as that is essentially how TecSec's own patents describe **the prior art** over which TecSec sought to distinguish its invention. The specification describes labeling both by itself and in combination with encryption. A151:2:34-40. And TecSec conceded in unmistakable terms that a system combining encryption with labeling was not new:

> By employing **a secure labelling technique in addition to encryption**, the sender can be assured that people having the correct key to decrypt the message but working at different terminals will not receive or be allowed to access the communication. ***Access may be limited to particular people as well***.
>
> A system **such as that described above** is disclosed in U.S. patent application Ser. No. 08/009,741.

A151:2:51-61. Application No. 08/009,741 (A2774-2838) became U.S. Patent No. 5,369,707 (A2746-68), issued to Follendore. As the patents at issue in this case

explain, Follendore '707 indeed describes labeling and access control in combination with encryption. *See, e.g.*, A2758:2:30-35 and A2778:4-9 (describing "a secure labelling technique in addition to encryption"); A2759:3:66-67 and A2781:17-19 (same); A2759:4:63-68 and A2783:20-24 (multiple levels of labels); A2761:7:11-25 and A2788:21-A2789:7 (pass phrase in addition to encryption); A2765:15:32-A2766:17:19 and A2807-09 (claiming a system that includes "access control subsystem[s]," and "encryption algorithm module[s]"). Follendore also describes controlling access to subparts of a file. *Compare* A2763:12:8-46 and A2799:18-2800:9 (controlling access to subparts of a file), *with* TecSec Br. at 11-12 (describing "the advantage" of its patents as controlling access to subparts of a file). Yet, TecSec has distinguished its patent over the Follendore patent in this case on the ground that the Follendore patent "fails to disclose" multi-level security. *See, e.g.*, A3002. TecSec cannot, on the one hand, distinguish prior art as not disclosing "multi-level … security," and on the other, argue for a construction of that term that refers to what TecSec has already admitted ***is*** in the prior art.

*Third*, TecSec argues that the method steps of claim 1 only describe encryption of one object, while the district court's construction requires encryption of two or more objects. TecSec Br. 20-21. That is a variation on TecSec's attempt to avoid the limiting effect of the preamble. The method steps that ***follow*** the preamble (which includes the "comprising" transition) refer to "encrypting the

object according to the encryption algorithm." The preamble *adds*, however, that the steps must be performed so as to provide "***multi-level … security***." TecSec's argument would read out that requirement.

Indeed, TecSec's argument would rule out its own previously proposed claim construction. TecSec argued for a construction of "multi-level … security" that includes actions that are not in the method steps. TecSec argued to the district court "multi-level … security" is "security provided by the nesting of individually encrypted objects." A1849. The method steps of claim 1 do not describe "nesting."

*Fourth*, TecSec invokes claim differentiation and argues that dependent claims—specifically claim 4 of the '702 patent—recite encryption of a "second object." TecSec Br. 21-22. According to TecSec, that triggers a presumption that the independent claims do not require encryption of more than one object. The district court addressed that argument, A17-20, and TecSec fails to point to error in that analysis. Claim differentiation is a rule of thumb based on the notion that patentees do not generally draft separate claims of exactly identical scope. *Sinorgchem*, 511 F.3d at 1140. That rule of thumb does not apply, however, where a proposed construction would not render any claims redundant. *Enzo Biochem, Inc. v. Applera Corp.*, 599 F.3d 1325, 1342 (Fed. Cir. 2010) ("Because claim 1 is broader than claim 14 under the district court's construction, this case simply does

47

not implicate the doctrine of claim differentiation."). As the district court correctly explained, claim 4 of the '702 patent requires steps beyond simply embedding and encrypting a second object – including "selecting a second label" and "labelling the second encrypted object"—and thus is not rendered identical to claim 1 by the district court's construction. A19. Hence, claim differentiation does not apply. More generally, TecSec's argument is, again, premised on the idea that "multi-level … security" is not a limitation on the claims. "Multi-level … security" is a limitation, however, and requires multiple levels of encryption, as made clear by all the intrinsic evidence. Two levels of encryption can be present, or more than two, as Figure 3 illustrates. The fact that dependent claims recite further levels of encryption neither suggests nor requires a different construction of the term "multi-level … security." A patentee cannot invoke claim differentiation to alter the meaning of a term otherwise apparent from the specification or committed to in prosecution, as TecSec seeks to do here. *Seachange Int'l, Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005) (Claim differentiation "is not a hard and fast rule and will be overcome by a contrary construction dictated by the written description or prosecution history."); *Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1370 (Fed. Cir. 2007) ("[T]he written description and prosecution history overcome any presumption arising from the doctrine of claim differentiation.") (citation omitted)).

*Fifth,* TecSec disputes that the specification supports the district court's analysis. TecSec Br. 23-26. TecSec cites ambiguous snippets from the specification to suggest that multiple levels of encryption may not be required, but fails to address the numerous unequivocal statements in the specification described above, which make clear that multiple levels of encryption are required.[4] For example, TecSec cites portions of the specification where it contends that the patentee described "multi-level" as "relat[ing] to the use of both access control and encryption." TecSec Br. 19-20 (citing A151:2:5-6, 2:31-34), *id.* at 25 (same). Those passages (a) do not use the term "multi-level … security," and (b) describe *the prior art*, including a description of access control and encryption used together. A151:2:31-61. Hence, they do not support TecSec's position.

TecSec also cites a statement that "the nesting of individually encrypted objects provides security that is multi-level and multimedia." TecSec Br. 26 (citing A152:4:32-34). That statement does not provide that "multi-level … security" exists absent multiple levels of encryption. Indeed, just two sentences earlier, the specification explains that multiple levels of encryption *are* used: "[m]ulti-level security is achieved because encrypted objects may be nested within

---

[4] In a footnote, TecSec notes that the patent includes the boilerplate disclaimer that "this description of these specific embodiments is merely illustrative of the principles of the underlying inventive concept." TecSec Br. 25 n.9. As described above, however, with respect to "multi-level … security," the specification consistently and repeatedly describes that "inventive concept" in terms of multiple levels of encryption.

other objects *which are also encrypted*." A152:4:25-27 "Nesting" refers to embedding objects within other objects; and the most natural reading of "nesting of individually encrypted objects" in the passage cited by TecSec is that individually encrypted objects are embedded within other individually encrypted objects. TecSec suggests that that passage might mean individually encrypted objects within other not-necessarily-encrypted objects, but fails to explain why that reading of that passage of the written description is better, much less compelled. The better reading, consistent with the rest of the specification, is that it refers to encrypted objects within other encrypted objects. Notably, this passage describing "security that is multi-level" says nothing about access control, belying TecSec's new proposed construction in this appeal.

TecSec also refers to two instances where the specification used the word "can" or "may" in referring to multiple levels of encryption, TecSec Br. 24 (citing A153:5:25-28), 25 ("may"). TecSec argues that the words "may" or "may be" when used in the specification do not limit claim scope. TecSec Br. 30. As the district court explained, however, in the context of these patents—including TecSec's description of the prior art and its statements to the Patent Office to overcome prior art rejections—"may be nested" means "capable of being nested." A14-15 & n.6. TecSec's argument is similar to an argument this Court rejected in *Irdeto*. There, as here, the patentee "point[ed] to language such as 'for example,'

'may,' and 'normally' in the … specification … as evidence of the district court's error." 383 F.3d at 1300. This Court rejected that argument where, as here, the specification "consistently use[d]" the disputed term in the way the district court construed it, and "[n]owhere [did] the specification contemplate" the broader construction for with the patentee argued. *Id.* at 1301. There, as here, the patent defined a disputed term through "consistent use in the specification," and that consistent use was held to be the correct construction. *Id.* at 1301-02; *see also Honeywell v. ITT*, 452 F.3d at 1318 (similar); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Grp., Inc.*, 262 F.3d 1258, 1268 (Fed. Cir. 2001) (patent can define a term through consistent usage "without an explicit statement of redefinition").

*Finally,* TecSec disputes that the prosecution history supports the district court's construction. TecSec Br. 26-30. Much of TecSec's argument on this point reiterates arguments made elsewhere in its brief. For example, TecSec's discussion of the examiner's rejection of claim 1 as indefinite for lacking the "essential method steps" of "encrypting" and "labelling," TecSec Br. 26-27, restates its argument that the claim language does not describe encryption of more than one object. TecSec Br. 20-21. As described above, however, that argument essentially amounts to another version of TecSec's waived argument that the

preamble should not be interpreted as a limitation on the claims. *Supra* pp. 27-28, 33-34.

TecSec also insists that there was no "disclaimer" of subject matter in its exchange with the Patent Office regarding the meaning of "multi-level … security." As with "multimedia," TecSec's "disclaimer" arguments are beside the point. The prosecution history is consistent with the overwhelming support in the specification for the district court's construction, and there is thus no issue of disclaimer. *See, e.g.*, *800 Adept*, 539 F.3d at 1364-65 ("[W]e do not consult the prosecution history for [disclaimer]. We simply use it as support for the construction already discerned from the claim language and confirmed by the written description."); *N. Am. Container*, 415 F.3d at 1348 (similar).

Indeed, nowhere does TecSec address the primary portion of the prosecution history that the district court cited as support for its construction. The patent applicant distinguished prior art ("Preston" reference) in response to an anticipation rejection by explaining that the patented invention encrypts container objects. A15 (citing A436). After noting that the claims recite a "system which can be used to select and encrypt objects," the applicant added that "[c]ontainer objects *can only be 'opened' by users having access authority in the form of a cryptographic key*." A15 (citing A436). In other words, TecSec's invention is distinct from the Preston reference, in part, because TecSec's invention includes

encrypted container objects. Instead of addressing that statement directly, TecSec argues that any binding effect of its statements in prosecution is negated by the fact that the applicant used words like "may" or "may be" in connection with multiple levels of encryption. TecSec Br. 28-31. Again, as noted above, the district court explained that in context such statements referred to capabilities, not options—*i.e.*, "may" meant "capable." A12-13 & n.5. It defies logic for TecSec to argue that the statements it made to overcome a prior art rejection were actually noncommittal suggestions about what might be hypothetically possible with its invention.

TecSec also emphasizes the use of the word "possibly" in the statement "Multi-level security is achieved because encrypted objects may be nested within other objects which are also encrypted, ***possibly*** within other objects, resulting in multiple layers of encryption." TecSec Br. 28 (quoting A427 / A152:4:25-28); *id.* at 29, 30. "Possibly" here merely means that two encrypted objects, one within the other, may possibly be contained within a ***third*** object that is not encrypted. Consistent with that statement in the specification and with the district court's claim construction, an encrypted object may be nested within another encrypted object, which is possibly nested within an ***un***encrypted object. A20 ("encrypted objects are nested within other objects which are also encrypted, possibly within other objects…"). "Multi-level" does not cover only a single level of encryption,

as TecSec contends, and these statements in the specification do not suggest otherwise.

## III.    Should This Court Reach the Issue, the District Court Correctly Construed the Means-Plus-Function Limitations

"[M]ulti-level … security" and "multimedia" are in *every* asserted claim, including those with means-plus-function elements.  Therefore, if the Court affirms the district court's construction of either term, the judgment should be affirmed and the Court need not reach TecSec's arguments regarding means-plus-function terms.  Should the Court reach those issues, the district court correctly held that TecSec invoked 35 U.S.C. § 112, ¶ 6 in several instances, but failed to meet its burden to identify the disclosure of corresponding structures that the statute requires.  A47-51.

35 U.S.C. § 112, ¶ 6 provides as follows:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover **the corresponding structure, material, or acts described in the specification** and equivalents thereof.

A patentee's use of the word "means"—and especially "means for"—raises a presumption that the patentee intended to invoke 35 U.S.C. § 112, ¶ 6.  *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1366 (Fed. Cir. 2008).  The party arguing otherwise bears the burden of rebutting the presumption, *Apex Inc. v.*

*Raritan Computer, Inc.*, 325 F.3d 1364, 1371-72 (Fed. Cir. 2003), as TecSec concedes. TecSec Br. 37-38.

Where a patent employs means-plus-function language, it "must set forth in the specification an adequate disclosure showing what is meant by that language." *In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc). "[T]he structure must not only perform the claimed function, but the ***specification must clearly associate the structure with performance of the function.***" *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002); *see also Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (similar). The point of that disclosure requirement "is to avoid pure functional claiming." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Gaming Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). The Supreme Court rejected the practice of functional claiming in the 1940s. *See, e.g.*, *Halliburton Oil Well Cementing Co. v. Walker*, 329 U.S. 1, 12-13 (1946). 35 U.S.C. § 112, ¶ 6, enacted in the 1952 Patent Act, is a narrow exception to the prohibition against functional claiming, and is essentially a bargain. "[I]n return for generic claiming ability, the applicant must indicate in the specification what structure constitutes the means." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 948 (Fed. Cir. 2007). "If the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid that price but is

rather attempting to claim in functional terms unbounded by any reference to structure in the specification. Such is impermissible under the statute." *Med. Instrumentation & Diagnostics Grp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003). The bargain of § 112, ¶ 6 is particularly prone to abuse in software patents such as TecSec's.

As to two terms—the "digital logic means" and "system memory means" terms of claim 8 of the '702 patent—TecSec argues that the district court erred in determining that they were means-plus-function claims and that TecSec did not disclose sufficient corresponding structure. TecSec Br. 41-44.

TecSec concedes that all of the other means-plus-function elements it raises on appeal invoke 35 U.S.C. § 112, ¶ 6, but argues that the district court erred in holding that TecSec had failed to show sufficient structure corresponding to the limitations. *Id.* at 45-50. TecSec's arguments are without merit.[5] As the district court correctly held, TecSec invoked the privilege of functional claiming under 35 U.S.C. § 112, ¶ 6, but failed to meet its burden to disclose the required structures. TecSec failed to respond to interrogatories requesting identification of structure,

---

[5] TecSec argues that "the district court's abbreviated treatment" of the means-plus-function claims "constitutes reversible error." TecSec Br. 36. This Court reviews judgments, not opinions, and not the amount of words a lower court devoted to a particular issue. *See, e.g., Ballard Med. Prods. v. Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358 (Fed. Cir. 2001) ("[T]here is nothing unique about claim construction that requires the court to proceed according to any particular protocol."); *id.* ("[T]he court may cut to the heart of the matter and need not exhaustively discuss all the other issues presented by the parties.").

A50 (citing A3025-26), and its expert report recites only generic computer parts

instead of disclosing the required structures.

> **A.** **The District Court Correctly Held That The "Digital Logic Means" and "System Memory Means" Limitations of Claim 8 of the '702 Patent are Means-Plus-Function Limitations and That TecSec Failed to Disclose Sufficient Structure**

Claim 8 provides as follows:

8. A system for providing multi-level multimedia security in a data network, comprising:

A) *digital logic means,* the *digital logic means* comprising:

> 1) *a system memory means for storing data;*
>
> 2) an encryption algorithm module, comprising logic for converting unencrypted objects into encrypted objects, the encryption algorithm module being electronically connected to the *system memory means* for accessing data stored in the first system memory;
>
> 3) an object labelling subsystem, comprising logic means for limiting object access, subject to label conditions, the object labelling subsystem being electronically connected to the *system memory means* for accessing data stored in the *system memory means* and the object labelling subsystem being further electronically connected to the encryption algorithm module to accept inputs from the encryption algorithm module;
>
> 4) a decryption algorithm module, comprising logic for converting encrypted objects into unencrypted objects, the decryption algorithm module being electronically connected to the *system memory means* for accessing data stored in the *system memory means*; and
>
> 5) an object label identification subsystem, comprising logic for limiting object access, subject to label conditions, the object label identification subsystem being electronically connected to the *system memory means* for accessing data stored in the

> *system memory means* and the object label identification
> subsystem being further electronically connected to the
> decryption algorithm module to accept inputs from the
> decryption algorithm module;

B) the encryption algorithm module working in conjunction with the
object labelling subsystem to create an encrypted object such that the
object label identification subsystem limits access to an encrypted
object.

A156-A157.  The district court correctly held that "system memory means" and

"digital logic means" were means-plus-function limitations and that TecSec failed

to disclose sufficient structure.[6]

> **1.    The District Court Correctly Held That "system memory
> means" is a Means-Plus-Function Limitation, and That
> TecSec Failed to Disclose Sufficient Structure**

The "system memory means" is plainly in means-plus-function format.  It

recites a means—"system memory means," then a function —"for storing data,"

and nothing more.  As noted above, use of "means," and *especially* "means for," is

a presumptive invocation of § 112, ¶ 6.  TecSec notes that the presumption "can be

rebutted *if the claim limitation itself* recites sufficient structure to perform the

claimed function in its entirety."  TecSec Br. 37-38 (citing *TI Grp. Auto. Sys. (N.

Am.), Inc. v. VDO N. Am., LLC*, 375 F.3d 1126 (Fed. Cir. 2004) as a case where a

limitation was found not to be a means-plus-function limitation as it recited a

---

[6] TecSec notes that IBM did not contend that either of those terms invoked § 112,
¶ 6, TecSec Br. 40, 43.  Determination of whether an element invokes § 112, ¶ 6 is
a matter of claim construction and a question of law.  *Cardiac Pacemakers, Inc. v.
St. Jude Med., Inc.*, 296 F.3d 1106, 1113 (Fed. Cir. 2002).  The district court is not
bound by IBM's argument or lack of argument on a particular point.

means as well as "its structure, location and operation").  Here, however, the claim limitation consists entirely of the words "a system memory means for storing data"—*i.e.*, a means, plus a function, and does not include anything remotely resembling structure, location or operation.

TecSec argues that "memory" is ***inherently*** a structural term, and cites an unpublished decision of this Court addressing a different patent for the proposition that "memory means" cannot be a means-plus-function element.  TecSec Br. 43.  That is plainly incorrect.  TecSec ignores that this Court has held that "memory means"—and "system memory means" in particular—***can*** be a means-plus-function limitation, and that it was in the context of a different patent.  *See, e.g.*, *Chicago Bd. Options Exch., Inc. v. Int'l Secs. Exch., LLC*, 677 F.3d 1361, 1366-67 & n.1 (Fed. Cir. 2012) ("the presumption that '***system memory means***' is a means-plus-function limitation is not overcome").  Where, as here, the patentee used the term "means" and recited no structure in the limitation, the district court correctly held, consistent with *Chicago Board*, that "system memory means for storing data" is a means-plus-function limitation.

TecSec argues that even if "system memory means" is a means-plus-function limitation its disclosure of nothing more than generic "memory" is sufficient.  TecSec Br. at 45.  TecSec argues that under *In re Katz Interactive Call Processing Patent Litigation*, 639 F.3d 1303, 1314-15 (Fed. Cir. 2011), it is

sufficient to disclose "memory" because the claimed function is a "general computing function." TecSec Br. 44. That argument is waived, as TecSec did not make it to the district court or to this Court in its previous appeal. It is also meritless. The disclosure requirement under § 112, ¶6 aims "to avoid pure functional claiming." *Aristocrat*, 521 F.3d at 1333. The "narrow exception" of *Katz* applies "only in the rare circumstances where any general-purpose computer without any special programming can perform the function that an algorithm need not be disclosed." *Ergo Licensing LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1365 (Fed. Cir. 2012). The "system memory means" is referred to eight times in the claim, is electronically connected to other elements, and is meant to provide data to those other elements under certain conditions. This is not one of those "rare circumstances" contemplated by *Katz*.

> **2.  The District Court Correctly Held That "system memory means" is a Means-Plus-Function Limitation, and That TecSec Failed to Disclose Sufficient Structure**

The "digital logic means" term is in means-plus-function format. The patent recites the "digital logic means," and ***several*** functions performed by "logic": "converting unencrypted objects into encrypted objects," "limiting object access" (twice), and "converting encrypted objects into unencrypted objects." TecSec argues that the "digital logic means" term is not in means-plus-function format because, it argues, the sub-elements provide structure, TecSec Br. 41-42. But the

"structures" TecSec purports to identify in the claim language are merely general functions such an encryption, decryption, and labeling, purportedly performed by "modules" instead of "means." The sub-elements, or "modules" of the "digital logic means" are further recitations of functional claim language—"black box[es] that perform[] recited function[s]," without disclosing how. *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1383 (Fed. Cir. 2009). The only thing that distinguishes the "digital logic means" element from the run-of-the-mill means-plus-function element is its complexity. *See, e.g.*, *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1314 (Fed. Cir. 2012) (where multiple functions are recited, patent must disclose structures corresponding to all functions). The "digital logic means" is a means-plus-function element and, as the district court correctly held, the subelements do not disclose the required "structure."

**B.    The District Court Correctly Held that TecSec Failed to Disclose Adequate Structure Corresponding with Any of the Other Means-Plus-Function Limitations**

Where a patent employs means-plus-function language, it "must set forth in the specification an adequate disclosure showing what is meant by that language." *Donaldson*, 16 F.3d at 1195. "[T]he structure must not only perform the claimed function, but the ***specification must clearly associate the structure with performance of the function.***" *Cardiac Pacemakers*, 296 F.3d at 1113. A patentee does not satisfy that requirement by describing a general purpose

61

computer in the specification, if the specification does not also disclose the algorithm necessary to carry out the claimed function. *Noah Sys.*, 675 F.3d at 1316-19; *Katz*, 639 F.3d at 1314-15.

TecSec argues that the district court erred in finding that TecSec failed to disclose sufficient structure for fourteen terms. As the district court correctly held, and as is plain from even a cursory look at the chart in TecSec's brief, TecSec's purported structures are not "structures" at all within the meaning of § 112, ¶ 6 and this Court's precedents. A50-51.

For example, the "structure" TecSec identifies as corresponding to "means for embedding a first object within a second object" is "computer hardware and software," with some nonrestrictive examples. TecSec Br. 46. TecSec also cites to A1978, a chart in its expert report citing numerous portions without explanation. Those citations in the expert report's chart are to functional flowcharts in the patent and to text passages that plainly fail to disclose any structure, let alone any "clear[] associat[ion of] the structure with performance of the function." *Cardiac Pacemakers*, 296 F.3d at 1113.

Similarly, the "structure" corresponding to "means for selecting an object to encrypt" is "an application or program, such as Word or WordPerfect," and the "structure" corresponding to several elements is a "key manager." It is difficult to imagine less descriptive recitals of "structure." The "key manager" TecSec points

to here is similar to the "access control manager" that this Court found insufficiently disclosed in *Blackboard*, where the patent described not structure, but "simply an abstraction that describes the function of controlling access to course materials, which is performed by some undefined component of the system. … essentially a black box that performs a recited function. But how it does so is left undisclosed." 574 F.3d at 1382-83.

The district court correctly held that TecSec failed to show that it met its end of the bargain of § 112, ¶ 6. Where, as here, "the specification is not clear as to the structure that the patentee intends to correspond to the claimed function, then the patentee has not paid the price but is attempting to claim in functional terms unbounded by any reference to structure in the specification." *Med. Instrumentation*, 344 F.3d at 1211. TecSec invoked the privilege of functional claiming, without paying the price that the statute requires.

## CONCLUSION

The judgment of the district court should be affirmed.

September 21, 2012

Respectfully submitted,

/s/ Jeffrey K. Sherwood
   (with permission)
_____

Jeffrey K. Sherwood
Megan S. Woodworth
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC 20006
202-420-3602

*Counsel for SAP AG, SAP America, Inc., and Sybase, Inc.*

/s/ Michael W. Robinson
   (with permission)
_____

Michael W. Robinson
Jeffri A. Kaminski
VENABLE LLP
8010 Towers Crescent Dr., Ste 300
Vienna, VA 22182
(703) 760-1684

*Counsel for Software AG and Software AG, Inc.*

/s/ Henry C. Bunsow
   (with permission)
_____

Henry C. Bunsow
Christina M. Finn
BUNSOW, DE MORY, SMITH
   & ALLISON LLP
55 Francisco Street, 6th Floor
San Francisco, CA 94133
(415) 675-8889

*Counsel for Adobe Systems, Inc.*

/s/ John C. O'Quinn
_____

Michael W. De Vries
KIRKLAND & ELLIS LLP
333 South Hope Street
Los Angeles CA 90071
(213) 680-8400

Steven C. Cherny
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York NY 10022
(212) 446-4800

John C. O'Quinn
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
(202) 879-5000

*Counsel for Defendants-Appellees Cisco Systems, Inc., SAS Institute, Inc., Oracle America, Inc., Oracle Corporation, and PayPal, Inc.*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

I certify that this brief complies with the type-volume limitation specified in Federal Rule of Appellate Procedure 32(a)(7)(B)(i).   According to the word processing system used to prepare this document, the document contains 13,840 words.


/s/  John C. O'Quinn

## **CERTIFICATE OF SERVICE**

On September 21, 2012, the undersigned caused the foregoing document to be filed electronically by using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ John C. O'Quinn